```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 9, 2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
United States of America,

                                                    20-CR-191 (KMW)
                                                    23-CV-543 (KMW)

         -against-                                      **OPINION & ORDER**

Charles Ogozy,
                       Defendant.
-------------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

      Petitioner Charles Ogozy, proceeding *pro se*, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel. (Pet'r's Mot., ECF No. 66.) The Government opposes Ogozy's motion. (Gov't Opp'n, ECF No. 80.) For the reasons below, Ogozy's motion is DENIED.

### BACKGROUND

      Ogozy was charged in connection with his participation in a scheme to defraud 26 individual victims, to defraud banks, and to launder the proceeds of a fraud. (Presentence Investigation Report ("PSR") ¶¶ 12, 18, ECF No. 35.) Ogozy and his co-conspirator conspired to open bank accounts for fake businesses, which they then used to launder the proceeds of their fraud. (*Id.* ¶¶ 13-15, 65.) Ogozy was charged in an Information with conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349 ("Count One"); conspiracy to receive stolen property, in violation of 18 U.S.C. § 371 ("Count Two"); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956 ("Count Three"). (*Id.* ¶¶ 1-4.)

      On December 22, 2020, Ogozy appeared before Judge Pauley and pleaded guilty to Count One pursuant to a plea agreement with the Government. (Gov't Opp'n, Ex. B ("Plea

1

Agreement").)  The plea agreement stipulated that Ogozy's Sentencing Guidelines range was 41 to 51 months' imprisonment ("the Stipulated Guidelines Range") and was based, in part, on a stipulation that the loss from the offense was more than $550,000 but not more than $1,500,000. (*Id.* at 2-3.)  Ogozy also agreed to waive his right to appeal his sentence, if the Court sentenced him within or below the Stipulated Guidelines Range.  (*Id.* at 4.)

During his plea allocution, Ogozy swore under oath that he had had an opportunity to confer with his attorney about his case, and that he was satisfied with his attorney's representation.  (Plea Tr. at 4:25-5:5, 7:15-21, ECF No. 33.)  Ogozy confirmed that he had read the plea agreement, discussed it with his attorney, and understood its contents at the time he signed it.  (*Id.* at 16:22-17:8.)  Ogozy confirmed that he understood that the Court could sentence him to a maximum term of 30 years imprisonment.  (*Id.* at 13:24-14:8, 15:14-16:21, 18:3-9.) Ogozy also confirmed that he understood that he would waive his right to appeal his sentence, if the Court sentenced him within the Stipulated Guidelines Range.  (*Id.* at 17:22-18:2.)  Judge Pauley accepted Ogozy's guilty plea, after concluding that Ogozy "[knew his] rights and . . . waiv[ed] them knowingly and voluntarily," that his plea was "entered knowingly and voluntarily," and that it was "supported by an independent basis in fact[.]"  (*Id.* at 22:7-16.)

Sentencing was initially scheduled for April 14, 2021, but it was adjourned several times at the parties' request and, separately, because of COVID-19.  On March 16, 2022, the undersigned imposed a sentence of 29 months' imprisonment.  (Sent'g Tr. at 23:7-11, ECF No. 57.)

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may move to "vacate, set aside or correct [his] sentence" if he believes his "sentence was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255(a). A petitioner may raise an ineffective assistance of counsel claim in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 508-09 (2003). A § 2255 motion requires a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b).

To succeed on an ineffective assistance of counsel claim, a petitioner must show that: (1) his "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms," and (2) he was "prejudiced" by his counsel's deficient performance. *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). When considering the first prong, courts "strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]" *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)). With respect to the second prong, courts consider whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 153 (quoting *Strickland*, 466 U.S. at 694).

**DISCUSSION**

Ogozy claims that defense counsel rendered constitutionally deficient representation because he failed to: (1) adequately advise Ogozy, in connection with his decision to plead guilty, that he could be sentenced to a term of imprisonment; (2) object to the 15-month delay in

3

Ogozy's sentencing, which Ogozy claims deprived him of his due process right to a prompt sentencing; and (3) provide Ogozy with a copy of his final PSR and dispute the loss amount underlying Ogozy's Stipulated Guidelines Range, which was contained in his plea agreement and reflected in his PSR. (Pet'r's Mot. at 2-4.) Before turning to the merits of Ogozy's motion, the Court addresses whether a hearing is necessary.

### I. No Hearing is Required to Rule on Ogozy's § 2255 Motion

Section 2255 requires a court to grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Based on the parties' submissions, the Court finds that no hearing is required.

Following Ogozy's submission of his present motion, the Government sought, and Ogozy consented to, a waiver of attorney-client privilege to obtain an affidavit from his counsel regarding his claims. (*See* Order, ECF No. 74; Attorney-Client Privilege Waiver (Informed Consent), ECF No. 76.) In his affidavit, Ogozy's counsel responds directly to Ogozy's ineffective assistance of counsel claims. (*See* Gov't Opp'n, Ex. A ("Chabrowe Aff.").) The Court gave Ogozy an opportunity to respond to his lawyer's affidavit, but Ogozy chose not to do so. The record—consisting of Ogozy's and counsel's affidavits, the plea agreement, and the transcripts of the guilty plea allocution, and the sentencing—is sufficient to dispose of Ogozy's claims, as discussed *supra*.

Because additional testimony would not clarify or meaningfully add to the record, the Court concludes that the parties' written submissions are sufficient to decide Ogozy's motion, and that no hearing is required. This "avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government . . . that would have resulted from a full testimonial hearing." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

## II.  Ogozy's Counsel was not Ineffective in Connection with His Guilty Plea

Ogozy asserts that his counsel was ineffective in connection with his guilty plea because he: (1) allegedly told Ogozy that he was not facing any "jail time" and (2) failed to object when Judge Pauley stated that the maximum possible penalty for Ogozy's offense was 30 years imprisonment.  (Pet'r's Mot. at 2-4; Pet'r's Aff. ¶¶ 15-16, 36, 47.)  Liberally construed, Ogozy's claims amount to a contention that his guilty plea was not entered into knowingly and voluntarily because he was unaware that the Court could sentence him to a term of imprisonment.

It is settled law that a guilty plea is invalid if it is not made knowingly and voluntarily. *See Wilson v. McGinnis*, 413 F.3d 196, 198-99 (2d Cir. 2005) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  Where a defendant claims that "counsel has misled him as to the possible sentence which might result from a plea of guilty . . . 'the issue is 'whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea[.]'" *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992).  In reviewing a § 2255 motion, a petitioner's "sworn testimony given during a plea colloquy 'carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made.'" *United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016) (quoting *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001)).

During his plea allocution, Ogozy made several sworn statements demonstrating that he had read, and understood, the contents of his plea agreement, and the consequences of pleading guilty, including that he could face a maximum term of imprisonment of 30 years:

> THE COURT: Now, do you understand, sir, that the maximum possible penalty for the crimes for which you're entering a plea of guilty is 30 years of imprisonment[?]

>   THE DEFENDANT: Yes, your Honor.
>   . . .
>   THE COURT: Do you understand that if your attorney or anyone else has attempted to estimate or predict what your sentence will be, that their estimate or prediction could be wrong?
>   THE DEFENDANT: Yes, your Honor.
>   THE COURT: No one, Mr. Ogozy – not even your attorney or the government – can nor should give you any assurance of what your sentence will be.  Your sentence cannot be determined until after the probation office report is completed, and I've . . . determined what sentence I believe is appropriate giving due regard to all the factors under Section 3553(a).  Do you understand that?
>   THE DEFENDANT: Yes, I do, your Honor.
>   . . .
>   THE COURT: [D]id you read [the plea] agreement prior to signing it?
>   THE DEFENDANT: Yes, I did, your Honor.
>   . . .
>   THE COURT: [D]id you fully understand this agreement at the time that you signed it?
>   THE DEFENDANT: Yes, I did, your Honor.

(Plea Tr. at 13:24-14:8, 16:2-17:8.)  In addition, Ogozy confirmed that he understood his alternatives to entering a guilty plea.  Ogozy confirmed that he understood that he had a right to plead not guilty and proceed to trial, where he would be presumed innocent and the Government would be required to prove his guilt beyond a reasonable doubt.  (*Id.* at 8:13-10:15, 11:21-25, 13:15-23.)  Ogozy also confirmed that no one had threatened or forced him to enter into a plea agreement or to plead guilty.[1]  (*Id.* at 17:18-21.)  Ogozy then pleaded guilty.  (*Id.* at 21:3-12.)

The Court declines to credit Ogozy's present self-serving and contradictory statements because the record establishes that Ogozy entered his plea knowingly and voluntarily, with an awareness of his actual sentencing possibilities.  Even if Ogozy's counsel had assured him that

---

[1] There is no evidence that Ogozy was "pressured into a 'proffer session,'" as he now claims.  (Pet'r's Mot. at 3.)  Ogozy's claim contradicts his counsel's, and his own, statements.  (*See* Chabrowe Aff. ¶ 7 (Ogozy was "extremely eager to try to help the government in any way he could"); Plea Tr. at 17:18-21 (confirming, at his plea allocution, that no one offered him any inducements, threatened him, or forced him to enter into the plea agreement); Sent'g Tr. at 14:17-20 ("[w]hen I was arrested, I immediately told them that I knew that something — you know, what I did was wrong, and I tried to — it's not much you can do at that point, but I tried to do what I could to make it right.").

6

he was not facing any "jail time," Ogozy's ineffective assistance of counsel claim fails because he pleaded guilty after Judge Pauley advised him of his actual sentencing possibilities.[2]

### III. Ogozy's Counsel was not Ineffective in Failing to Raise a Fifth Amendment Due Process Claim

Ogozy next claims that his counsel was ineffective in failing to assert that the 15-month delay in his sentencing deprived him of his Fifth Amendment due process right to a prompt sentencing. (Pet'r's Mot. at 2-3.) Ogozy was not deprived of due process and his claim, therefore, fails.

Courts consider "(1) the reasons for the delay as well as (2) the prejudice to the accused" when evaluating whether a defendant has been deprived of his due process right to a prompt sentencing. *United States v. Ray*, 578 F.3d 184, 199 (2d Cir. 2009) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)). A "defendant must show both prejudice and an unjustified reason for the delay in order to prove a due process violation." *Id*. The factors are "to be weighed in light of each other and the surrounding circumstances." *Id.* at 199-200. In considering the reasons for delay, a "[d]eliberate delay to hamper the defense weighs heavily against the prosecution[, m]ore neutral reasons such as negligence or overcrowded courts weigh less heavily[.]" *Id.* at 200 (quoting *Vermont v. Brillon*, 129 S. Ct. 1282, 1290 (2009)). With respect to "the prejudice claimed by the defendant, absent extraordinary circumstances, must be substantial and demonstrable." *Id.* at 200-02 (holding that the defendant was deprived of due process when her resentencing was delayed for 15 years and after she had undergone a

---

[2] Ogozy's argument that his counsel was ineffective in failing to object to Judge Pauley's statement that he could face a 30-year maximum term of imprisonment is without merit. Petitioner pleaded guilty to conspiracy to commit bank fraud and wire fraud, in violation of 18 U.S.C. § 1349. (J. at 1, ECF No. 53.) Section 1349 provides for a maximum term of imprisonment of 30 years. *See* 18 U.S.C. §§ 1349 ("[a]ny person who . . . conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy"), 1344 (30-year maximum for bank fraud); *see also* PSR ¶ 140. Because there is no basis for Ogozy's claim, Ogozy's counsel was not ineffective in failing to object.

"complete rehabilitation."). Here, the record does not support Ogozy's claim that he was deprived of due process.

First, most of the delay is attributable to defense counsel's, rather than the Government's, requests for adjournments.[3] Defense counsel requested additional time for justifiable reasons: to compile information about Ogozy's family circumstances; to collect letters in support of Ogozy from his family overseas; to avoid scheduling conflicts with counsel's other matters; and because of counsel's and Ogozy's medical issues.[4] (*See* Mem. Endorsements, ECF Nos. 37, 39, 41, 44, and 48 (joint request).) In addition, because Ogozy requested an in-person sentencing, his sentencing was further delayed because of COVID-19. (*See* Gov't Opp'n at 14.)

Second, Ogozy's claim that the delay in his sentencing caused him increased anxiety and depression does not establish substantial and demonstrable prejudice. *See United States v. Nieves*, 648 F. App'x 152, 155 (2d Cir. 2016) (summary order) ("[t]o the extent [defendant] maintains that [a nearly eight-year] delay resulted in . . . anxiety, [that does not] demonstrate more than minimal prejudice."). Ogozy's and his counsel's statements at sentencing undermine Ogozy's claim that the delay in his sentencing, rather than his arrest and conviction, induced his mental health challenges. (*See* Sent'g Tr. at 5:14-16, 7:4-15, 15:2-5.)[5] Although the Court acknowledges the challenges that Ogozy has endured, and that the delay in his sentencing could

---

[3] Ogozy pleaded guilty on December 22, 2020. Sentencing was initially scheduled for April 14, 2021, approximately four months after Ogozy pleaded guilty. The Court sentenced Ogozy approximately eleven months later, on March 16, 2022. Approximately seven months of this delay is attributable to defense counsel's requests, two and a half weeks is attributable to the Government's request, and one month is attributable to the parties' joint request. (*See* ECF Nos. 37, 39, 41, 44, 45, 48.) The remaining two and a half months are attributable to the Court having had postponed sentencing because of COVID-19. (*See* ECF Nos. 46, 50; Gov't Opp'n at 14.)

[4] The Government objected to defense counsel's fourth request for an adjournment, demonstrating that the Government did not deliberately delay sentencing. (*See* ECF No. 44 ("AUSA Ravi objects to this request."))

[5] Ogozy's and his counsel's statements at sentencing reflect that Ogozy began experiencing anxiety soon after his arrest. (*See* Sent'g Tr. at 5:14-16 ("He began deteriorating somewhat rapidly mentally . . . at the time of his arrest"), 7:4-15 ("And the shame that he feels is so intense, that I think it drove him to the point . . . and he just sort of started deteriorating mentally"), 15:2-5 ("Being institutionalized, going from somebody who I was always a happy-go kid, I was – I'm not an extrovert, but I was always a happy person, to dealing with depression and having to cry every day because of the mistakes that I've made.")).

have aggravated his conditions to an extent, such challenges often arise in the post-conviction context, and are not substantial.

On balance, the Court finds that this is not the "unusual case where the dictates of fundamental fairness clearly compel [the Court] to conclude that [Ogozy's] rights were violated." *Ray*, 578 F.3d at 202. Because Ogozy was not deprived of due process, Ogozy's ineffective assistance of counsel claim fails.

### IV. Ogozy's Counsel was not Ineffective in Connection with His Sentencing

Ogozy claims that his counsel was ineffective in failing to provide Ogozy with a copy of his final PSR and failing to dispute the loss amount underlying his Stipulated Guidelines Range, which was stated in his plea agreement and reflected in his PSR. (Pet'r's Mem. at 3-4.) As an initial matter, Ogozy's challenges to his sentence are barred by the collateral attack waiver in his plea agreement. *See Cavounis v. United States*, No. 12-CR-297, 2015 WL 4522826, at *4 (S.D.N.Y. July 24, 2015) (Caproni, J.) (finding that the same claims were barred by a waiver because they were "a roundabout way to challenge Petitioner's sentence."). Even if they were not barred, however, both claims fail on the merits.

#### A. Ogozy Has Waived His Right to Appeal His Sentence

A defendant's waiver of his right to collaterally attack his sentence is generally enforceable. *See e.g.*, *Garcia-Santos v. United States*, 273 F.3d 506, 508-09 (2d Cir. 2001) (per curiam). The Second Circuit has stated that "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement." *United States v. Cano*, 494 F. Supp. 2d 243, 248 (S.D.N.Y. 2007) (Chin, J.). "[W]aivers may be set aside where [the] 'defendant is challenging the constitutionality of the process by which he waived those rights,' including when 'the defendant claims that the plea agreement was entered

9

into without effective assistance of counsel' and when the waiver was not made voluntarily and competently." *Khan v. United States*, No. 07-CR-711, 2014 WL 2111677, at *6 (S.D.N.Y. Apr. 28, 2014) (Preska, J.). Conversely, "[w]here the record reveals that the waiver was knowing and voluntary, and that there is no merit to the ineffective assistance claim, the waiver should be enforced." *Muniz v. United States,* 360 F. Supp. 2d 574, 577 (S.D.N.Y. 2005) (Stein, J.) (citing *United States v. Monzon*, 359 F.3d 110, 119 (2d Cir. 2004)).

Having found that Ogozy entered into his plea agreement knowingly and voluntarily, Ogozy has waived his right to challenge his sentence of 29 months. Ogozy signed a plea agreement that expressly waived his right to directly appeal or collaterally attack his sentence, if the Court sentenced him within or below the Stipulated Guidelines Range. (*See* Plea Agreement at 4.) At his plea allocution, Ogozy acknowledged that he understood that he was forfeiting his right "to appeal or otherwise challenge [his] sentence if this Court sentence[d] [him to 41 to 51 months imprisonment[]][.]" (Pl. Tr. at 17:22-18:2.) Ogozy's unambiguous statement on the record confirms that he knowingly and voluntarily waived his right to challenge his sentence. Accordingly, the Court finds that Ogozy's waiver is valid and enforceable.

### B. Notwithstanding Waiver, Ogozy's Claims in Connection with His Sentencing Fail on the Merits

Even if Ogozy had not waived his right to challenge his sentence, his contentions regarding defense counsel's conduct at sentencing are meritless. The record does not support Ogozy's claim that defense counsel rendered constitutionally deficient representation.

First, Ogozy's claim that counsel failed to provide him with his final PSR is belied by the record. At sentencing, the Court asked Ogozy's counsel whether he and Ogozy had had an opportunity to review the PSR, to which counsel stated: "Yes, we have, your honor." (Sent'g Tr. at 2:13-19; *see also* Chabrowe Aff. ¶ 10.) Ogozy alleges that he asked counsel "to see a copy of

[his] PSR whilst in the courtroom" for sentencing, but counsel did not provide it to him. (*See* Pet'r's Aff. ¶ 49.) When given an opportunity to speak, however, Ogozy did not dispute his counsel's representation to the contrary. *See Cruz v. United States*, No. 01-CV-224, 2001 WL 727032, at *2 (S.D.N.Y. June 27, 2001) (Cote, J.) (rejecting a similar claim because "the defense attorney advised the Court that she and her client had read the [PSR], discussed it with each other, and had no objections to it" and the petitioner "never contradicted his attorney's description of their review of the presentence report"); *United States v. Stanley*, No. 06-CR-0315, 2009 WL 10677081, at *7 (N.D.N.Y. Nov. 3, 2009) (rejecting the same claim because "when presented with an opportunity from the Court to speak, petitioner made no mention that he did not receive or review the PSR"); *Genovese v. United States*, No. 18-CR-183, 2023 WL 2185699, at *2 (S.D.N.Y. Feb. 23, 2023) (Furman, J.) (rejecting a similar claim).

Second, Ogozy's counsel was not ineffective for failing to object to the stipulated loss amount. Pursuant to his plea agreement, Ogozy agreed that "the loss from the offense was more than $550,000 but not more than $1,500,000[.]" (Plea Agreement at 2.) Ogozy also agreed that he would not "seek any departure or adjustment pursuant to the Guidelines that is not set forth herein." (*Id.* at 3.) Ogozy's counsel acted reasonably when he did not raise an objection precluded by Ogozy's plea agreement. Ogozy, moreover, was not prejudiced by his counsel's failure to object to the stipulated loss amount because there was ample support for the calculation. (*See* PSR ¶ 65; Chabrowe Aff. ¶¶ 5, 11.)

## CONCLUSION

For the foregoing reasons, Ogozy's motion is DENIED. Because Ogozy has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253. Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this Order would not be taken in good faith and thus Ogozy may not proceed *in forma pauperis* for any such appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk is respectfully directed to close the motion at ECF No. 66 and mail a copy of this Order to Ogozy.

SO ORDERED.

Dated: New York, New York
November 09, 2023

　　　　　　　　　　　　　　　　　　　　*/s/ Kimba M. Wood*
　　　　　　　　　　　　　　　　　　　　Kimba M. Wood
　　　　　　　　　　　　　　　　　　　　United States District Judge